UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETAFENCE USA, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-1478-B |
| | § | |
| DAVIS DISTRIBUTING, INC., OF | § | |
| LIBERTY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Davis Distributing, Inc. of Liberty's Motion to Dismiss under

Rules 12(b)(2) and 12(b)(3) (doc. 5), filed May 21, 2012. For the reasons set forth below, the Court

**DENIES** Defendant's motion.

I.

BACKGROUND[1]

This action arises out of a contractual dispute between Plaintiff Betafence USA, L.L.C. and

Defendant Davis Distributing Inc., of Liberty. Betafence has its principal, and only, place of business

in Ennis, Ellis County, Texas where it sells fence materials and related hardware. Pl. Resp. Facts. ¶

1. Davis is a Kentucky corporation with its principal place of business in Dunnville, Kentucky and

is in the business of selling and distributing gates and fencing. Def. Br. Supp. M. Dism. 2. In February

---

[1] The facts are derived from the parties' pleadings and from the evidence contained in the
jurisdictional evidence record. Unless characterized as a contention by one of the parties, these facts are
undisputed.

2011, an employee of Davis contacted Betafence by phone, inquiring about Betafence's products. Gusho Aff. ¶ 2. Subsequently, Betafence and Davis communicated via phone and email, with Davis submitting a credit application to Betafence via email in March 2011. Corkin Aff. ¶ 4. Next, Davis sent a purchase order to Betafence via email, with Betafence's Texas address clearly displayed. Pl. Appx. 10. Betafence followed up with a sales order and invoice directed to Davis detailing the goods ordered and amount owed. Pl. Appx. 11-15. Both the purchase order created by Davis and the sales order created by Betafence named Ennis, Texas as the place where Davis would collect the materials (the "FOB Ennis, Texas" term). Pl. Appx. 10-14.

Betafence contends it manufactured and prepared the goods for Davis to pick up in Texas, according to the purchase order. Corkin Aff. ¶ 7. Betafence and Davis exchanged several emails about the goods being ready for pickup, with Davis scheduling and rescheduling pickup multiple times. Corkin Aff. ¶ 10. After two months of making the goods available for pickup without Davis taking delivery in Ennis, Texas, Betafence shipped the goods to Davis in Kentucky, where Davis accepted the goods but did not pay. Corkin Aff. ¶ 14.

Betafence brought suit in the District Court of Ellis County, Texas, alleging claims of unpaid account, breach of contract, quantum meruit, and for attorney's fees on February 21, 2012. Pl. Orig. Pet. Davis timely removed the action to this Court pursuant to diversity jurisdiction, as Betafence is seeking in excess of $75,000 in this suit. Davis filed the instant motion to dismiss (doc. 5) based on lack of personal jurisdiction and improper venue, or in the alternative, moves to transfer venue. Betafence timely filed its response[2] (doc. 15) and Davis has replied (doc. 17). Thus, the motion is ripe

_____

[2] Included with Betafence's response were various objections to Davis' evidence. All conflicts of fact between the parties' affidavits and other evidence must be resolved in the plaintiff's favor when

for decision.

## II.

## LEGAL STANDARDS

A.      *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas' long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067-68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.

---

evaluating a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Therefore, Betafence's objections are immaterial to the Court's decision at this stage and are thus overruled, but may be re-urged in later proceedings.

1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id*. at 1068 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). Specific jurisdiction exists when the cause of action arises from the nonresident defendant's contacts with the forum state. *Gundle*, 85 F.3d at 205. In either context, the court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart*, 772 F.2d at 1192.

B.      *Venue*

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). If venue is laid in the wrong division or district, the district court shall either dismiss or transfer the case to any district or division in which the action could have been brought. 28 U.S.C. § 1406(a). In a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(3) for improper venue, the court must view all facts in a light most favorable to the plaintiff. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009). The court may look to the facts in the complaint and affidavits or any other evidence submitted by the non-moving party to inform its decision in a Rule 12(b)(3) motion to dismiss or transfer. *Id.* at 238 (citing *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138-40 (9th Cir. 2004)).

### III.

### ANALYSIS

A.      *Personal Jurisdiction*

      *1.*      *Davis' contacts with the forum state*

To establish this Court's personal jurisdiction over Davis, Betafence must make only a prima facie case of jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004). Since the Court did not hold an evidentiary hearing, any conflict in jurisdictional evidence is to favor plaintiff Betafence. *Id.* The Court only looks to contacts Davis had with Texas, as any unilateral actions by Betafence in Texas are irrelevant to the inquiry regarding Davis' contacts with Texas. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). It is undisputed that Davis had the following contacts with Texas:

- Davis, through employee James McCubbin, contacted Betafence by telephone in late February 2011 requesting more detailed information about Betafence's products. Gusho Aff. ¶ 2.

- Davis submitted a credit application to Betafence via email. Corkin Aff. ¶ 4.

- Davis submitted a purchase order to Betafence listing Betafence's physical Texas address via email. Corkin Aff. ¶ 5; Pl. Appx. 10.

- Title to the goods was supposed to pass at Betafence's place of business in Ennis, Texas. Corkin Aff. ¶ 5; Pl. Appx. 10-14.

- Payment, because the place of payment was not specified and is thus determined under the Texas Business and Commerce Code, was to be made to Betafence in Texas. *Id.*

- Davis agreed to take delivery of the goods in Texas. Corkin Aff. ¶ 7.

- Davis confirmed its intention to take delivery in Texas numerous times via email. Corkin Aff. ¶ 10-13; Pl. Appx. 18, 19.

- Davis failed to take delivery after numerous appointments and Betafence shipped the goods to Davis in Kentucky, where the goods were accepted. Corkin Aff. ¶ 14.

- Davis regularly has trucks in Texas, has at least fifty-six customers in Texas, and has raised nearly one million dollars in revenue in Texas during the first six months of 2012. McCubbin Aff. July 23, 2012 ¶ 5-6; Pl. Appx. 37, 38.

- Betafence's sole office and manufacturing facility is located in Ennis, Texas. Pl. Resp. ¶ 1.

- No employee of Davis ever traveled to Texas for any business with Betafence. McCubbin Aff. May 18, 2012 ¶ 6.

- There was no choice of law provision in the contract. *See* Pl. Appx. 10-15 (no choice of law specified).

2.      Davis' contacts demonstrate the requisite minimum contacts with Texas

"[A] nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight*, 322 F.3d at 382 n.6. The question at the core of the minimum contacts inquiry is whether the defendant "reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759.

The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297). "A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

The Supreme Court, in the context of personal jurisdiction, explained "the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (internal quotations omitted). The Supreme Court highlighted the relevant factors in determining whether a defendant purposefully established minimum contacts: "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* Where the contract is to be performed is a "weighty consideration" in the personal jurisdiction analysis. *Command-Aire v. Ontario Mechanical Sales and Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).

Betafence, in order to establish its prima facie case for this Court's personal jurisdiction over Davis, points to the facts that the contract was to be performed in Texas, title to the goods was to pass in Texas, and Davis solicited what could have been a long term business relationship with Betafence in Texas. Pl. Resp. 1-2. Betafence maintains that when Davis agreed to the "FOB Ennis, Texas" shipping term and repeatedly confirmed its intention to pick up the goods in Texas, Davis agreed to perform the entire contract in Texas, including payment. Pl. Appx. Corkin Aff. ¶¶ 2-5, 7-

13.

For its part, Davis disputes the importance of the "FOB Ennis, Texas" shipping designation, stating jurisdiction "does not depend on the technicalities of when title passes" and that "FOB" is about allocating loss, not jurisdiction. *Luv N' care*, 438 F.3d 465, 472 (5th Cir. 2006). Davis also claims that the FOB term was never negotiated and that even if it was a term of the contract, Betafence waived it when it shipped the goods to Kentucky. Def. Reply 4.

While an FOB term standing alone may not supply the minimum contacts necessary for personal jurisdiction, the FOB term here is not the sole factor for consideration. As mentioned, Davis repeatedly confirmed its intention to pick up the goods in Texas and then failed to do so. Corkin Aff. 10-14. For instance, Davis' employee, Mr. McCubbin, wrote in an email that Davis had "a driver in Corpus Christi that was going to try to pick up the goods." Pl. Appx. 22. The extensive communication regarding delivery weighs in favor of performance occurring in Texas, and ergo in favor of personal jurisdiction in Texas.

Next, Davis challenges Betafence's contention that the place of payment was Texas, stating that neither the quote nor the purchase order indicate where payment was to be made and thus the default is the domicile of the payor, which is Davis in Kentucky. Def. Reply 5. But even absent a specification as to place of payment, payment still would have been due in Texas. Under the Texas Business and Commercial Code, unless otherwise agreed "payment is due at the time and place at which the buyer is to receive the goods..." Tex. Bus. & Com. Code Ann. § 2.310 (West 2005). Thus, payment was due where Davis was to pick up the goods – in Texas.

Davis also contends that the credit application does not aid Betafence's argument in favor of personal jurisdiction, but the Court disagrees. While the credit application alone is not

determinative, it demonstrates another contact Davis had with Betafence and that Davis was fully aware that Betafence was a Texas company.  On the credit application, submitted to Betafence, Davis includes the name of a company in El Paso, Texas as a favorable business reference. Credit App. Pl. Appx. 8.

In terms of the passage of title, for the purposes of deciding this motion the Court concludes that title was intended to be passed in Texas. *See* Corkin Aff. 10-14. The passage of title is relevant to minimum contacts here as the passage of title would have signaled the conclusion of the contract at issue. Shipping the goods to Kentucky after repeatedly making the goods available for pickup in Texas does not negate the fact that under the agreement Davis was to take title in Texas.

Finally, in making its prima facie case for personal jurisdiction, Betafence contends that Davis took affirmative steps to develop an ongoing business relationship with Betafence, evidenced by discussions of a distributorship, and therefore, Davis purposefully availed itself to the laws of Texas. Pl. Resp. 14. When an out-of-state company reaches out to a Texas company through various methods of communication to begin a business relationship, that out-of-state company is purposefully availing itself to the benefits and protections of Texas law. *See Cent.Freight*, 322 F.3d at 382. Thus, the contemplated business relationship extending beyond this single agreement does weigh in favor of jurisdiction.

In addition to the opposition noted above, Davis directs the Court to three Fifth Circuit cases, *McFadin*, *Freudensprung*, and *Hydrokinetics*, in an effort to demonstrate this Court's lack of personal jurisdiction. Contacts in these cases were determined to be insufficient to establish minimum contacts despite a non-resident's contract with a Texas resident, extensive communications regarding the performance of the contract, and mailing payments to Texas. *See*

*McFadin*, 587 F.3d at 760; *See Freudensprung*, 379 F.3d at 344; *See generally Hydrokinetics*, 700 F.2d 1026. Yet, each of the cases cited by Davis is distinguishable from the current case.

In *McFadin*, a Texas resident manufacturer brought suit against Colorado residents for breach of a sales representative agreement. Important to the Fifth Circuit in holding that the Texas court did not have personal jurisdiction was the fact that "the contract was centered around [the defendant's] operations outside of Texas. . . . The entire purpose of the agreement was to open up markets outside of Texas..." *McFadin*, 587 F.3d at 760. The hub of all activities in *McFadin* was Denver, Colorado, whereas in the case at hand the goods were produced in Ennis, Texas and more importantly were to be picked up by Davis in Ennis, Texas. Thus, Davis' contacts with Texas were more than "merely contracting with a resident" of Texas, as Davis was supposed to pick up the goods within the forum state. *See id.*

In *Freudensprung*, the Fifth Circuit affirmed the district court's dismissal for lack of personal jurisdiction over a Panamanian barge operator. 379 F.3d 327. The individual plaintiff in *Freudensprung* sued for injuries sustained while working on a barge off the coast of Nigeria. *Id.* at 344-45. The plaintiff attempted to base personal jurisdiction over the Panamanian defendant on a contract between the plaintiff's employer and the Panamanian barge operator. The plaintiff was not a party to that contract, the contract specified English law as applicable in any dispute, and material potions of the contract were to be performed in West Africa, not Texas. *Id.* Here, Betafence and Davis are the only parties to the contract and lawsuit, there was no choice of law provision specifying Kentucky law, and all material portions of the contract were to be performed in Texas. Thus, the current case is distinguishable from *Freudensprung*.

Finally, Davis claims that *Hydrokinetics* is analogous to this case.  While there are similarities,

ultimately *Hydrokinetics* is distinguishable. In *Hydrokinetics*, the plaintiff was a Texas corporation

suing an Alaska corporation based on a sale of goods. 700 F.2d at 1027. The defendant agreed to

purchase specific goods to be manufactured in Texas, payment was to be made in Texas, there were

extensive communications between the parties both in Texas and Alaska, and the contract was

formally created in Texas. *Id.* at 1028-29. Despite these contacts, the Fifth Circuit held that the

district court in Texas did not have personal jurisdiction over the defendant. *Id.* at 1028-29.

Important to the Circuit's reasoning was the fact that the contract was the sole contact the

defendant had with Texas and that there was a choice of law provision specifying that the agreement

be governed and construed according to the laws of the state of Alaska. *Id.* at 1029. In *Hydrokinetics*,

delivery was to take place outside of Texas and no performance by the defendant, besides payment,

was to take place within Texas. *Id.* at 1029.

Here, in distinguishing the case before the Court from *Hydrokinetics*, there was no such choice

of law provision. When the contract does not specify the law to be applied, the place where the

contract was completed and performed becomes relevant in determining under what law the contract

might be enforced. *See New York Life Ins. v. Baum*, 617 F.2d 1201, 1204 (5th Cir. 1980) ("[W]here

the contract is made in one jurisdiction but to be performed in another the presumption arises that

the parties contracted with reference to the place of performance.") Here, the place of performance

was in Texas. Thus, it became reasonably foreseeable to Davis that Texas law and Texas courts may

be used to enforce the contract. Even further, while in *Hydrokinetics* the defendant's only contact

with Texas was the contract at issue, Davis has conducted business with at least fifty-six other

customers in Texas and has raised almost a million dollars of revenue in Texas in the first six months

of 2012. Pl. Appx. 53; McCubbin Aff. July 23, 2012 ¶ 5.

For these reasons, the Court finds that "[u]nder any 'highly realistic' and non-'mechanical' understanding" of the agreement and course of conduct between Davis and Betafence, it is clear that Davis took "purposeful and affirmative action" which caused foreseeable business activity in Texas. *See Cent. Freight*, 322 F.3d at 382-83 (citing *Burger King*, 471 U.S. at 474-76). Thus, the Court concludes that Davis has sufficient minimum contacts with Texas and to reasonably have expected to be haled into court in Texas.

3.      Fair Play and Substantial Justice

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Cent. Freight*, 322 F.3d at 384 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). After minimum contacts have been shown, it is rare that the assertion of jurisdiction is unfair. *McFadin*, 587 F.3d at 759-60. To determine whether the exercise of jurisdiction is fair and reasonable, the court must balance:

> (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). *See also Burger King*, 471 U.S. at 476-77.

Davis regularly has trucks in Texas and thus far has raised nearly $1 million in revenue in Texas in 2012. McCubbin Depo. 33: 1-8; McCubbin Aff. July 23, 2012 ¶ 5. Thus, Davis' burden of defending itself in Texas is not so onerous as to rise to the level of unfairness. Regarding the interests of the forum state, "Texas has a legitimate interest in providing an effective means of redress for the

-12-

failure by [the defendant] to pay." *Command-Aire*, 963 F.2d at 95. Betafence certainly has an interest

in resolving this dispute in Texas. Continuing this action here is more efficient and a better use of

judicial resources than transferring the case to a district court in Kentucky.

Betafence has pled and demonstrated sufficient facts to establish Davis' minimum contacts

with Texas and it would not offend traditional notions of fair play and substantial justice for this

Court to maintain jurisdiction over Davis. Thus, specific personal jurisdiction is proper in the

Northern District of Texas and Davis' Motion to Dismiss under Rule 12(b)(2) is **DENIED**.[3]

C.    *Venue*

Venue is proper in the Dallas Division of the Northern District of Texas. Davis was supposed

to take delivery of the goods in Ennis, Texas pursuant to the agreement. Corkin Aff. ¶ 7. When

Davis did not abide by the terms of the contract to take delivery, the breach occurred in Ennis,

Texas. Thus, a substantial part of the acts or omissions forming the basis of the suit, the breach of

contract, occurred in Ennis, Texas, which is within the Dallas Division of the Northern District of

Texas. *See* 28 U.S.C. § 1391(b). Therefore, because venue is proper in the Northern District of

Texas, Dallas Division, Davis' Motion to Dismiss under Rule 12(b)(3) is **DENIED**.

D.    *Transfer*

Davis makes only a cursory argument in favor of transfer to the Western District of Kentucky

pursuant to 28 U.S.C. § 1406(b). The Western District of Kentucky also would be a proper venue

for this action, as it is where Davis resides, but in order to meet its heavy burden to transfer venue,

the  transferee venue must be "clearly more convenient than the venue chosen by plaintiff." *In re*

---

[3] Having found specific personal jurisdiction, the Court does not examine Betafence's claim of general personal jurisdiction.

*Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). The "court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, No. 3:11-cv-0836-D, 2011 WL 4100958, *3 (N.D. Tex. Sept 14, 2011) (Fitzwater, C.J.). Furthermore, defendant must demonstrate that on balance the public and private interest factors weigh in favor of transfer. *In re Volkswagen*, 545 F.3d at 315. Davis has made no such showing, in fact neglecting to even mention the public and private interest factors in either its Motion to Dismiss or its Reply. The Court finds Davis has not satisfied the heavy burden to transfer venue and to the extent Davis' motion requests transfer it is hereby **DENIED.**

### IV.

### CONCLUSION

For the aforementioned reasons, Davis' Motion (doc. 5) is **DENIED.**

**SO ORDERED.**

**DATED October 19, 2012.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE